**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | **No. 1:21-cr-00043-LM** |
| | ) | |
| **MICHAEL RACINE** | ) | |

**PLEA AGREEMENT**

Pursuant to Rules 11(c)(1)(B) and 11(c)(1)(C) of the Federal Rules of Criminal

Procedure, the United States of America by its attorney, Jane E. Young, United States Attorney

for the District of New Hampshire, and the defendant, Michael Racine, and the defendant's

attorney, John V. Apruzzese, Esq., enter into the following Plea Agreement:

1. <u>The Plea and The Offense</u>.

The defendant agrees to plead guilty to Count 1 of the Indictment that charges him with

conspiracy to distribute a controlled substance, cocaine base, in violation of 21 U.S.C. § 846 and

§ 841(b)(1)(C).

In exchange for the defendant's guilty plea, the United States agrees to the sentencing

stipulations identified in Section 6 of this agreement.

2. <u>The Statute and Elements of the Offense</u>.

Title 21, United States Code, Section 841(a)(1), provides, in pertinent part:

[I]t shall be unlawful for any person knowingly or intentionally to . . . distribute,
or . . . or possess with intent to . . . distribute, a controlled substance.

Title 21, United States Code, Section 846 provides, in pertinent part:

Any person who attempts or conspires to commit any offense defined in this
subchapter shall be subject to the same penalties as those prescribed for the
offense, the commission of which was the object of the attempt or conspiracy.

The defendant understands that the offense has the following elements, each of which the

- 1 -

United States would be required to prove beyond a reasonable doubt at trial:

> First, that the agreement specified in the indictment, and not some other agreement or agreements, existed between at least two people to distribute or possess with intent to distribute a controlled substance; and

> Second, that the defendant willfully joined in the agreement.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2022 Revisions,* Instruction 4.18.371(1),

http://www.med.uscourts.gov/pdf/crpjilinks.pdf.

The defendant understands that distribution of a controlled substance has the following elements, each of which the United States would be required to prove beyond a reasonable doubt at trial:

> First, that the defendant or a co-conspirator on the date in the indictment transferred a controlled substance to another person;

> Second, that the defendant or a co-conspirator knew the substance was a controlled substance; and

> Third, that the individual acted intentionally, that is, it was his conscious object to transfer the controlled substance to another person.

*Pattern Criminal Jury Instructions for the District Courts of the First Circuit, District of Maine Internet Site Edition, 2022 Revisions*, Instruction § 4.21.841(a)(1)B.

3. <u>Offense Conduct</u>.

The defendant stipulates and agrees that if this case proceeded to trial, the government would introduce evidence of the following facts, which would prove the elements of the offense beyond a reasonable doubt:

In March 2019, law enforcement first received information that the defendant was involved in the distribution of controlled substances in and around the Keene, New Hampshire, and Brattleboro, Vermont, area.   Later, in August 2019, investigators sought to confirm the

earlier tip and make a controlled purchase from the defendant.

Utilizing a confidential informant ("CI"), investigators arranged an initial deal with the defendant to purchase two "balls" of crack cocaine for $450 in the parking lot of the train station in downtown Brattleboro, Vermont.   On August 7, 2019, the deal came to fruition, with a Homeland Security Investigations ("HSI") Special Agent accompanying the CI in an undercover capacity.   The defendant arrived in a car with New Hampshire plates driven by another individual.   The defendant ultimately provided the CI seven "50 pieces" in exchange for $300. A subsequent lab test confirmed the substances to be cocaine base, with a total estimated weight of 1.43 grams that were purchased.

On or about August 12, 2019, investigators again arranged to purchase cocaine base from the defendant.   The member of law enforcement, again operating in an undercover capacity, was to purchase the approximately an ounce of cocaine base for $1,200.   The defendant informed the undercover officer that the drugs were being brought to Brattleboro from the Hinsdale, New Hampshire, area.   Shortly after this, a 1999 Plymouth Breeze bearing Massachusetts registration plates, driven by an individual known to the defendant arrived.   The defendant then took the buy money, provided it to his acquaintance, and returned the purchased narcotics to the undercover officer.   A subsequent lab test was positive for 22.25 grams of cocaine base.

A subsequent deal was arranged with the defendant on or about August 20, 2019, wherein the member of law enforcement, still operating in an undercover capacity, arranged to purchase a quantity of cocaine base from the defendant for $1,600.   The defendant and the agent travelled to New Hampshire to try and locate defendant's supplier, but were initially unsuccessful.   They reconvened later in the day where the defendant took the $1,600 in buy money but fled the area without providing the requested controlled substances.

- 3 -

Law enforcement then contacted defendant's supplier directly, and arranged for the purchase on or about August 26, 2019, of two "balls" of cocaine base (approximately 4 grams) for $500.   That individual and the undercover officer arranged to meet in Brattleboro, Vermont. Another individual who was not the defendant or the acquaintance conducted the deal, providing the controlled substance in exchange for the agreed upon $500.   A subsequent lab analysis of one of the balls revealed cocaine base in the amount of 2.08 grams.

4.   Penalties, Special Assessment and Restitution.

The defendant understands that the penalties for the offense are:

A.      A maximum prison term of 20 years (21 U.S.C. § 841(b)(1)(C));

B.      A maximum fine of $1,000,000 (21 U.S.C. § 841(b)(1)(C));

C.      A term of supervised release of at least 3 years (21 U.S.C. § 841(b)(1)(C)). The defendant understands that the defendant's failure to comply with any of the conditions of supervised release may result in revocation of supervised release, requiring the defendant to serve in prison all or part of the term of supervised release, with no credit for time already spent on supervised release; and

D.      A mandatory special assessment of $100 for the sole count of conviction, at or before the time of sentencing (18 U.S.C. § 3013(a)(2)(A)); and

E.      In addition to the other penalties provided by law, the Court may order the defendant to pay restitution to the victim(s) of the offense (18 U.S.C. § 3663 or § 3663A).

To facilitate the payment and collection of any restitution that may be ordered, the defendant agrees that, upon request, the defendant will provide the United States with a financial disclosure statement and supporting financial documentation.

The defendant further agrees that, if restitution is ordered, it shall be due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, the defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full, including, but not limited to, the Treasury Offset Program.

5.   <u>Sentencing and Application of the Sentencing Guidelines</u>.

The defendant understands that the Sentencing Reform Act of 1984 applies in this case and that the Court is required to consider the United States Sentencing Guidelines as advisory guidelines. The defendant further understands that he has no right to withdraw from this Plea Agreement if the applicable advisory guideline range or his sentence is other than he anticipated.

The defendant also understands that the United States and the United States Probation Office shall:

A.   Advise the Court of any additional, relevant facts that are presently known or may subsequently come to their attention;

B.   Respond to questions from the Court;

C.   Correct any inaccuracies in the pre-sentence report;

D.   Respond to any statements made by him or his counsel to a probation officer or to the Court.

The defendant understands that the United States and the Probation Office may address the Court with respect to an appropriate sentence to be imposed in this case.

The defendant acknowledges that any estimate of the probable sentence or the probable sentencing range under the advisory Sentencing Guidelines that he may have received from any source is only a prediction and not a promise as to the actual sentencing range under the advisory Sentencing Guidelines that the Court will adopt.

6. <u>Sentencing Stipulations and Agreements</u>.

Pursuant to Fed. R. Crim. 11(c)(1)(C), the United States and the defendant stipulate and agree to the following:

(a)   30 months of imprisonment is an appropriate disposition of this case; and

(b)   The defendant agrees to pay restitution to the United States in the amount

of $1,600.

The parties intend the above stipulations to be "binding" under Fed. R. Crim. P. 11(c)(1)(C). By using the word binding the parties mean that if the Court will not accept the plea agreement under Fed. R. Crim. P. 11(c)(3)(A), the plea agreement is null and void and the defendant will be allowed the opportunity to withdraw his guilty plea.

Pursuant to Fed. R. Crim. 11(c)(1)(B), the United States and the defendant stipulate and agree to the following:

> (a)   The United States acknowledges that the Department of Justice supports the passage of the Equal Act, which is presently pending Congressional approval. As currently drafted, the Equal Act, if passed and signed into law, would retroactively eliminate the current 18:1 powder cocaine to cocaine base ("crack") sentencing ratio embodied in the advisory sentencing guidelines. In assessing the application of the Section 3553(a) sentencing factors, the Court may wish to consider whether the powder-to-crack sentencing disparity is warranted. *See Kimbrough v. United States*, 552 U.S. 85, 106-06 (2007).

The parties are free to make recommendations with respect to the terms of imprisonment, fines, conditions of probation or supervised release, and any other penalties, requirements, and conditions of sentencing as each party may deem lawful and appropriate, unless such recommendations are inconsistent with the terms of this Plea Agreement.

7.   Acceptance of Responsibility.

The United States agrees that it will not oppose an appropriate reduction in the defendant's adjusted offense level, under the advisory Sentencing Guidelines, based upon the

defendant's apparent prompt recognition and affirmative acceptance of personal responsibility

for the offense. The United States, however, may oppose any adjustment for acceptance of

responsibility if the defendant:

A.   Fails to admit a complete factual basis for the plea at the time he is sentenced or at any other time;

B.   Challenges the United States' offer of proof at any time after the plea is entered;

C.   Denies involvement in the offense;

D.   Gives conflicting statements about that involvement or is untruthful with the Court, the United States or the Probation Office;

E.   Fails to give complete and accurate information about his financial status to the Probation Office;

F.   Obstructs or attempts to obstruct justice, prior to sentencing;

G.   Has engaged in conduct prior to signing this Plea Agreement which reasonably could be viewed as obstruction or an attempt to obstruct justice, and has failed to fully disclose such conduct to the United States prior to signing this Plea Agreement;

H.   Fails to appear in court as required;

I.   After signing this Plea Agreement, engages in additional criminal conduct; or

J.   Attempts to withdraw his guilty plea.

The defendant understands and agrees that he may not withdraw his guilty plea if, for any

of the reasons listed above, the United States does not recommend that he receive a reduction in

his sentence for acceptance of responsibility.

The defendant also understands and agrees that the Court is not required to reduce the

offense level if it finds that he has not accepted responsibility.

If the defendant's offense level is sixteen or greater, and he has assisted the United States

in the investigation or prosecution of his own misconduct by timely notifying the United States

of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing

for trial and permitting the United States and the Court to allocate their resources efficiently, the

United States will move, at or before sentencing, to decrease the defendant's base offense level

by an additional one level pursuant to U.S.S.G. § 3E1.1(b).

8.   <u>Waiver of Trial Rights and Consequences of Plea</u>.

The defendant understands that he has the right to be represented by an attorney at every

stage of the proceeding and, if necessary, one will be appointed to represent him.   The defendant

also understands that he has the right:

A.      To plead not guilty or to maintain that plea if it has already been made;

B.      To be tried by a jury and, at that trial, to the assistance of counsel;

C.      To confront and cross-examine witnesses;

D.      Not to be compelled to provide testimony that may incriminate him; and

E.      To compulsory process for the attendance of witnesses to testify in his defense.

The defendant understands and agrees that by pleading guilty he waives and gives up the

foregoing rights and that upon the Court's acceptance of his guilty plea, he will not be entitled to

a trial.

The defendant understands that if he pleads guilty, the Court may ask him questions

about the offense, and if he answers those questions falsely under oath, on the record, and in the

presence of counsel, his answers will be used against him in a prosecution for perjury or making

false statements.

9.   <u>Acknowledgment of Guilt; Voluntariness of Plea</u>.

The defendant understands and acknowledges that he:

A.    Is entering into this Plea Agreement and is pleading guilty freely and voluntarily because he is guilty;

B.    Is entering into this Plea Agreement without reliance upon any promise or benefit of any kind except as set forth in this Plea Agreement or revealed to the Court;

C.    Is entering into this Plea Agreement without threats, force, intimidation, or coercion;

D.    Understands the nature of the offense to which he is pleading guilty, including the penalties provided by law; and

E.    Is completely satisfied with the representation and advice received from his undersigned attorney.

10.   <u>Scope of Agreement</u>.

The defendant acknowledges and understands that this Plea Agreement binds only the undersigned parties and cannot bind any other non-party federal, state or local authority. The defendant also acknowledges that no representations have been made to him about any civil or administrative consequences that may result from his guilty plea. The defendant understands such matters are solely within the discretion of the specific non-party government agency involved. The defendant further acknowledges that this Plea Agreement has been reached without regard to any civil tax matters that may be pending or which may arise involving the defendant.

11.   <u>Collateral Consequences</u>.

The defendant understands that as a consequence of his guilty plea he will be adjudicated guilty and may thereby be deprived of certain federal benefits and certain rights, such as the right to vote, to hold public office, to serve on a jury, or to possess firearms.

The defendant understands that, if he is not a citizen of the United States, his guilty plea to the charged offense will likely result in him being subject to immigration proceedings and removed from the United States by making him deportable, excludable, or inadmissible. The

defendant also understands that if he is a naturalized citizen, his guilty plea may result in ending his naturalization, which would likely subject him to immigration proceedings and possible removal from the United States. The defendant understands that the immigration consequences of this plea will be imposed in a separate proceeding before the immigration authorities. The defendant wants and agrees to plead guilty to the charged offense regardless of any immigration consequences of this plea, even if this plea will cause his removal from the United States. The defendant understands that he is bound by his guilty plea regardless of any immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to his guilty plea and to his sentence based on any immigration consequences and agrees not to seek to withdraw his guilty plea, or to file a direct appeal or any kind of collateral attack challenging his guilty plea, conviction, or sentence, based on any immigration consequences of his guilty plea.

12.   Satisfaction of Federal Criminal Liability; Breach.

The defendant's guilty plea, if accepted by the Court, will satisfy his federal criminal liability in the District of New Hampshire arising from his participation in the conduct that forms the basis of the indictment in this case.

The defendant understands and agrees that, if after entering this Agreement, he fails specifically to perform or fulfill completely each one of his obligations under this Agreement, fails to appear for sentencing, or engages in any criminal activity prior to sentencing, he will have breached this Agreement.

If the United States, in its sole discretion, and acting in good faith, determines that the defendant committed or attempted to commit any further crimes, failed to appear for sentencing, or has otherwise violated any provision of this Agreement, the United States will be released from its obligations under this Agreement, including, but not limited to, any agreement it made

to dismiss charges, forbear prosecution of other crimes, or recommend a specific sentence or a sentence within a specified range. The defendant also understands that he may not use his breach of this Agreement as a reason to withdraw his guilty plea or as a basis to be released from his guilty plea.

13. <u>Waivers</u>.

A. Appeal.

The defendant understands that he has the right to challenge his guilty plea and/or sentence on direct appeal. By entering into this Plea Agreement the defendant knowingly and voluntarily waives his right to challenge on direct appeal:

1.      His guilty plea and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues; or claims challenging the constitutionality of the statute of conviction; and

2.      The sentence imposed by the Court if it is consistent with or lower than the stipulated sentence specified in Section 6 of this agreement.

The defendant's waiver of his rights does not operate to waive an appeal based upon new legal principles enunciated in Supreme Court or First Circuit case law after the date of this Plea Agreement that have retroactive effect; or on the ground of ineffective assistance of counsel.

B. Collateral Review

The defendant understands that he may have the right to challenge his guilty plea and/or sentence on collateral review, e.g., a motion pursuant to 28 U.S.C. §§ 2241 or 2255.   By entering into this Plea Agreement, the defendant knowingly and voluntarily waives his right to collaterally challenge:

1.      His guilty plea, except as provided below, and any other aspect of his conviction, including, but not limited to, adverse rulings on pretrial suppression motion(s) or any other adverse disposition of pretrial motions or issues, or claims challenging the constitutionality of the statute of

conviction; and

2.      The sentence imposed by the Court if it is consistent with or lower than the stipulated sentence specified in Section 6 of this agreement.

The defendant's waiver of his right to collateral review does not operate to waive a collateral challenge to his guilty plea on the ground that it was involuntary or unknowing, or on the ground of ineffective assistance of counsel. The defendant's waiver of his right to collateral review also does not operate to waive a collateral challenge based on new legal principles enunciated by in Supreme Court or First Circuit case law decided after the date of this Plea Agreement that have retroactive effect.

C. Freedom of Information and Privacy Acts

The defendant hereby waives all rights, whether asserted directly or through a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of the case(s) underlying this Plea Agreement, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. §552, or the Privacy Act of 1974, 5 U.S.C. §522a.

D. Appeal by the Government

Nothing in this Plea Agreement shall operate to waive the rights or obligations of the Government pursuant 18 U.S.C. § 3742(b) to pursue an appeal as authorized by law.

14.    No Other Promises.

The defendant acknowledges that no other promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement or revealed to the Court, and none will be entered into unless set forth in writing, signed by all parties, and submitted to the Court.

15.    Final Binding Agreement.

None of the terms of this Plea Agreement shall be binding on the United States until this

Plea Agreement is signed by the defendant and the defendant's attorney and until it is signed by

the United States Attorney for the District of New Hampshire, or an Assistant United States

Attorney.

      16.   <u>Agreement Provisions Not Severable.</u>

The United States and the defendant understand and agree that if any provision of this

Plea Agreement is deemed invalid or unenforceable, then the entire Plea Agreement is null and

void and no part of it may be enforced.

JANE E. YOUNG
United States Attorney

Date: 9/1/2022

By
    Charles L. Rombeau
    Assistant United States Attorney
    NY Bar Association #4326500
    53 Pleasant St., 4th Floor
    Concord, NH 03301
    charles.rombeau@usdoj.gov

The defendant, Michael Racine, certifies that they have read this 13-page Plea Agreement
and that they fully understand and accept its terms.

Date: 8/31/22

X
    Michael Racine, Defendant

I have read and explained this 13-page Plea Agreement to the defendant, and they have
advised me that they understand and accepts its terms.

Date: 8/31/22

    John V. Apruzzese, Esq.
    Attorney for Michael Racine

- 13 -